**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ASCOT INSURANCE COMPANY, ET AL.**<br><br>**VERSUS**<br><br>**AMERICAN RIVER TRANSPORTATION COMPANY, LLC** | **CIVIL ACTION NO.: 22-2874 c/w 22-cv-2979 c/w 22-cv-2966**<br>**SECTION D \| DIVISION 4**<br><br>**JUDGE VITTER**<br><br>**MAGISTRATE ROBY** |

**<u>MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO LIMIT OPINION TESTIMONY OF TROY CURRAULT, NICHOLAS CURRAULT, ANDRE' CURRAULT, SIDNEY FREEMAN, AND FRED WILLHOFT</u>**

MAY IT PLEASE THE COURT:

Defendant, American River Transportation Co., LLC ("ARTCO"), submits this *Memorandum In Support of Motion In Limine to Limit Opinion Testimony of Troy Currault, Nicholas Currault, Andre' Currault, Sidney Freeman, and Fred Willhoft*.

**I. Relevant Background**

During Hurricane Ida around August 29, 2021, ARTCO suffered multiple barge breakaways from its Kenner Bend and Flowers fleets near mile marker 115 of the Lower Mississippi River (collectively referred to as "Fleets"). Plaintiffs Lower River Ship Service, LLC ("LRSS") and Crescent Ship Service, Inc. ("CSS") operate docks and vessels downriver from ARTCO's Fleets. LRSS and CSS allege that breakaway ARTCO barges damaged their property during the hurricane. Around that time, witnesses Fred Willhoft, Troy Currault, Nicholas Currault, Andre' Currault, and Sidney Freeman (collectively "Plaintiff Witnesses") sheltered on various vessels moored in the CSS and LRSS facilities. Plaintiff Witnesses allegedly observed ARTCO barges floating downriver in the hurricane conditions. Now, CSS and LRSS have designated

Plaintiff Witnesses as non-retained experts under Federal Rule of Evidence 26(a)(2)(C) to testify about causation of the breakaway.

For reference, **Troy** and **Nicholas Currault** are father and son, and they co-own LRSS.[1] Mr. Troy Currault was designated as LRSS' corporate representative during depositions.[2] **Andre' Currault** is Mr. Troy Currault's youngest son, and he works for the company in various capacities.[3] **Sidney Freeman**, an employee of an unrelated entity, Port Ship Services, was also stationed aboard an LRSS vessel during the storm.[4] **Fred Willhoft** is the vice president of CSS and was designated as its corporate representative.[5]

LRSS and CSS allege that ARTCO's hurricane preparations were inadequate,[6] which ARTCO of course contests.[7] They have alleged specifically that ARTCO's pre-storm rigging was insufficient and that ARTCO should have forced its crew to monitor the fleet during the hurricane. LRSS and CSS designated Plaintiff Witnesses to offer expert opinions on these topics, despite the fact that they already hired a liability expert, Captain David Verret, to analyze these same issues. Specifically, LRSS and CSS designate Plaintiff Witnesses to testify on the following objectionable topics:

- ARTCO had "ample warning and time to prepare for the conditions experienced during Hurricane Ida," and "the [maritime] industry had time to prepare for the storm;"[8]

---

[1] Troy Currault Dep. 9:24—10:3, 10:23—11:4, attached as Exhibit A.
[2] *Id.* at 10:6—18.
[3] *Id.* at 63:3—6.
[4] *Id.* at 69:9—11; 225:23—226:7.
[5] Willhoft Dep. 9:24—10:1; 11:12—21, attached as Exhibit B.
[6] *See* Rec. Docs. 2, 17.
[7] *See* Kinzeler Report, attached as Exhibit C.
[8] LRSS Expert Disclosures, p.3, 4 attached as Exhibit D; CSS Expert Disclosures, p. 3, attached as Exhibit E.

- ARTCO "[f]ailed to prepare for Hurricane Ida and implement reasonable hurricane preparedness measures which resulted in the barge breakaway";[9]
- ARTCO should have "run soft lines on top of barge-to-barge moorings";[10]
- ARTCO did not conduct proper fleet surveillance;[11]
- "ARTCO's failure to assign fleet boats to conduct fleet surveillance prior to and during the storm resulted in significant barge breakaway damage"[12]
- It was possible for ARTCO to conduct fleet surveillance;[13]
- It was possible for ARTCO deckhands to "safely monitor and tend moorings" during Hurricane Ida.[14]
- "ARTCO fleet boats could have and should have caught barges after they broke away during Hurricane Ida . . . . ARTCO's fleet boats failure to do so resulted in significant barge breakaway damage . . ."[15]

CSS and LRSS also designate Plaintiff Witnesses to testify about their experiences in the maritime industry, their own river operations, their own hurricane preparations, and what they observed during the storm. ARTCO has no objection to Plaintiff Witnesses giving opinion testimony on these topics. But if CSS and LRSS want Plaintiff Witnesses to give expert testimony on causation and negligence in preparation for litigation, as reflected in the bullet points above, Plaintiff Witnesses should have complied with Rule 26(a)(2)(B) and submitted written expert reports/disclosures, at the very minimum. Notwithstanding their noncompliance with the Federal

[9] LRSS Disclosures at 3; CSS Expert Disclosures at 3.
[10] LRSS Disclosures at 3
[11] *Id.*
[12] *Id.* at 4.
[13] *Id.*at 4-5.
[14] *Id.* at 5.
[15] *Id.*at 4.

Rules of Civil Procedure, Plaintiff Witnesses' purported expert testimony does not pass scrutiny under Federal Rule of Evidence 702 and *Daubert*. Plaintiff Witnesses are unqualified to render opinions on ARTCO's marine operations. Further, their opinions is woefully unreliable. They admit that they did not visit ARTCO's fleet before the hurricane and do not actually know how ARTCO moored its barges. They interviewed no ARTCO witnesses after the hurricane and otherwise performed no investigation into the breakaway. The Court should limit Plaintiff Witnesses' opinion testimony for these reasons.

## II. Law and Analysis

### 1. LRSS and CSS fail to comport with the requirements of Rule 26(a)(2).

Retained experts must provide written reports and other disclosures, but non-retained experts must not.[16] Non-retained experts are those "who are testifying as fact witnesses, although they may express some expert opinions."[17] Congress distinguished experts who are specially employed for litigation from those who are non-retained "'actor[s] or viewer[s] with respect to transactions or occurrences' that form the substantive basis of the lawsuit."[18] A classic example of a non-retained expert is a plaintiff's treating physician who used an expert opinion to diagnose the plaintiff but did not specially form his or her opinion for trial purposes.[19]

A witness who "stray[s] into opinions that they may have developed in preparation for litigation" should be excluded if the reporting requirements of Fed. R. Civ. P. 26(a)(2) are not followed.[20] For example, a section in this district applied these limitations to company employees

---

[16] Federal Rule of Civil Procedure 26(a)(2)(B)-(C).
[17] *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.*, No. 07-8446, 2009 WL 981724, at *6 (E.D. La. Apr. 9, 2009) (citing *Day v. Consol. Rail Corp.*, 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996).
[18] *Id.* at *4 (citing Rule 26 Advisory Committee's note to 1973 Amendment).
[19] *Id.*
[20] *Id.* at *5.

who were designated as non-retained experts.[21] The court observed that their testimony should be limited "only as to facts and opinions that were not produced specifically in preparation for the trial of this matter," and if they deviate, they are subject to the reporting requirements of Rule 26(a)(2)(B).[22] In a similar case, this Court warned that it would limit the testimony of an employee who was designated as a non-retrained expert.[23] This Court noted that a party employee who developed a software program at issue in the litigation could testify as a non-retained expert about his "ground-level involvement in the events giving rise to the litigation."[24] But he must comply with the reporting requirements of Rule 26(a)(2)(B) if he gives opinions "developed in preparation for this litigation."[25]

Here, LRSS and CSS do not comply with Rule 26(a)(2). As a preliminary matter, ARTCO takes no issue with the Employees giving opinion testimony about their experience as mariners on the Lower Mississippi River, their respective marine operations, their own hurricane preparations, and any personal observations made during and after the hurricane. But according to CSS' and LRSS' expert disclosures, the Plaintiff Witnesses will also give liability opinions as to ARTCO. Specifically, the Employees may testify about the timing and reasonableness of ARTCO's hurricane preparations, whether ARTCO's fleet surveillance was adequate, whether ARTCO's rigging was sufficient, the causes of the breakaways, and actions that could have prevented the breakaways. These opinions exceed the Plaintiff Witnesses "ground-level involvement" and address issues at the heart of LRSS' and CSS' liability argument against ARTCO. The opinions

---

[21] *Id.*
[22] *Id.* at *6.
[23] *See* MGTL, LLC v. Strategic Technology, No. 20-2138, 2022 WL 474161, at *6 (E.D. La. Feb. 16, 2022).
[24] *Id.*
[25] *Id.*

were clearly formed in preparation for litigation and should be excluded for failure to comply with Rule 26(a)(2)(B).

Further, LRSS and CSS already retained a liability expert, Captain David Verret, to opine on these very issues. In fact, Captain Verret makes opinions on all of the same topics: the timing and reasonableness of ARTCO's hurricane preparations, whether ARTCO's fleet surveillance was adequate, whether ARTCO's rigging was sufficient, the causes of the breakaways, and more.[26] Of course, ARTCO strongly contests these arguments. But the point is that LRSS and CSS disclosed a retained expert and provided a report containing the same arguments made by the alleged non-retained "experts," who did not provide a report. It seems incongruent to argue, on one hand, that liability arguments necessitate a hired expert, while on the other hand, the same arguments can be made by witnesses to the breakaway without need for an expert report. Such testimony would also be cumulative if allowed at trial under Federal Rule of Evidence 403.

**2. Even if the Court finds compliance with Federal Rule 26(a)(2), LRSS and CSS still fail to show that the Plaintiff Witnesses are qualified to give opinions on ARTCO's alleged liability.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The "threshold inquiry" is "whether the individual has the qualifications to do so."[27] An expert opinion is admissible if the witness is "qualified as an expert by knowledge, skill, experience, training, or education . . . ."[28] The party presenting the expert testimony bears the burden of proving that the expert meets the requirements of Rule 702.[29]

Here, CSS and LRSS have not met their burden of proving Plaintiff Witnesses are qualified to render opinions on the sufficiency of ARTCO's fleeting practices, hurricane preparations, and

[26] *See* Verret Report, attached as Exhibit F.
[27] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011).
[28] Fed. R. Evid. 702.
[29] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

breakaway causation. As to LRSS' corporate representative, Troy Currault, ARTCO can only guess at how he would be qualified to render expert opinions on ARTCO's liability. But if it is due to his ownership in LRSS, that fact certainly does not automatically qualify him to render opinions on ARTCO's protocol. LRSS and ARTCO are completely different operations. In Mr. Currault's words, LRSS "provide[s] ship service to the ships, which is anchor replacement, anchor retrieval, dunnage removal, slops off vessels. And we also do dock repairs and some construction."[30] LRSS also has only about seven employees.[31] In contrast, ARTCO is a multi-state operation with hundreds of employees. ARTCO offers fleeting services along the Mississippi River and in Ohio, Illinois, and St. Louis. ARTCO also operates line boats throughout the country. While this is not a size contest, it is worth highlighting the difference in the scope of operations to illustrate that Plaintiffs' Witnesses lack the expertise to issue expert opinions on what ARTCO allegedly did or did not do.

It is similarly unclear how CSS' corporate representative, Fred Willfhoft, is qualified to give expert opinions on ARTCO's alleged liability. While there is no question that Mr. Willhoft, as vice president of CSS, has business experience in the Lower Mississippi River marine industry, such experience does not automatically render him qualified to analyze ARTCO's alleged liability. CSS provides transportation and supplies through "water taxi" or launch boat services.[32] Their operations are vastly different from ARTCO's.

As for the remaining non-retained experts, LRSS and CSS have not fulfilled their burden of proving that Nicholas Currault (LRSS co-owner), Andre' Currault (LRSS employee), and Sidney Freeman (third-party employee who was on an LRSS vessel during the storm) are qualified

[30] Troy Curault Dep. 14:5—11.
[31] *Id.* at 11:18—25.
[32] Willhoft Dep. 15:7—19.

to testify as to ARTCO's alleged liability. Mr. Nicholas Curault is 25-years-old and received his captain's license in late 2019.[33] Mr. Andre' Curault is 22-years-old who graduated Sea School in August 2022.[34] This is not an age competition – undersigned counsel certainly may not pass such a measure – but since LRSS and CSS have not offered any type of qualifications for these witnesses, ARTCO is working with the limited information it has to anticipate their arguments. Assuming LRSS and CSS may argue for these witnesses' marine backgrounds, it is unfounded to say that their (limited) experience as mariners automatically begets expert competency for these purposes. If this were the sole standard, any mariner on the Lower Mississippi could be deemed an expert in matters he or she may have little or no experience. Ultimately, LRSS and CSS must do more to prove by a preponderance of the evidence that Plaintiff Witnesses pass scrutiny under Rule 702 as to their "opinions" on ARTCO's alleged liability.

**3. Even if the Court finds that the Employees are qualified, LRSS and CSS fail to prove that Plaintiff Witnesses' opinions are reliable under Rule 702 and *Daubert*.**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires a district court to act as a "gatekeeper" to ensure "any and all scientific evidence admitted is not only relevant, but reliable."[35] Non-retained experts, as we have here, must withstand scrutiny under *Daubert*.[36] The court's gatekeeping function involves a two-part inquiry into reliability and relevance.[37] Under the reliability inquiry, a court must analyze whether the

[33] Nicholas Curault Dep. 7:20—21; 10:8—10:12, attached as Exhibit G.
[34] Andre' Curault Dep. 8:18-19; 10:2—10:13, attached as Exhibit H.
[35] 509 U.S. 579, 589 (1993).
[36] *See Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2016 WL 3180776, at *7 (E.D. La. June 7, 2016) (citing *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015).
[37] *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2016 WL 3180776, at *8 (E.D. La. June 7, 2016).

reasoning and methodology underlying the expert's testimony is valid.[38] The party presenting the expert bears the burden proving reliability by a preponderance of the evidence.[39] The test for reliability is flexible, but the goal is to ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[40] The court should exclude testimony that is based only on subjective belief or unsupported speculation.[41]

Here, Plaintiff Witnesses' opinions on ARTCO's liability are based only on subjective belief and unsupported speculation. They did not visit ARTCO's fleets before the storm and do not know how ARTCO moored its barges in preparation therefore. They did not perform investigations after the Hurricane. They did not talk to any ARTCO witnesses about what happened. Plaintiff Witnesses observed *some* ARTCO barges drifting down river during the hurricane and could allegedly see *some* rigging on *some* of those barges. From those personal observations, Plaintiffs' Witnesses have extrapolated that ARTCO's entire hurricane preparations were inadequate. But this is not a case of *res ipsa* or strict liability. There must be actual evidence presented, and there is *nothing* reliable about extrapolating from a snapshot of one side of a barge sighted during a hurricane that ARTCO's entire, complex, and multi-day preparations across multiple fleets were negligent.

The following exchange from the deposition of Troy Currault, LRSS' corporate representative, is revealing:

> Q: Do you know how ARTCO moored its barges that broke away before the storm?
>
> A: No.

---

[38] *Id.*
[39] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[40] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).
[41] *Daubert*, 509 U.S. at 589.

> Q: Do you know how it moored them?
>
> A:Well, I know how other fleets moored barges.
>
> Q: But you don't know ARTCO did it?
>
> A: I did not ever go in ARTCO's fleet. No. I do not work for ARTCO's fleet.[42]
>
> . . .
>
> Q: You didn't see the rigging that [ARTCO] had before the storm, did you?
>
> A: No. I seen the rigging hanging off the barge.[43]

Mr. Troy Curault also testified that he did not do a formal investigation or root cause analysis of the alleged damage after the storm.[44] Further, LRSS never called ARTCO after the storm to discuss their alleged damages or anything else for that matter.[45] Similarly, Andre' Curault (LRSS employee) testified that he did not know whether an investigation was performed – he certainly did not do one.[46] Nicholas Curault (LRSS co-owner) testified that, while he claims that some rigging he saw on some ARTCO barges were inadequate in his estimation, he did not get a glimpse of the entire barge to see what other rigging may have been present.[47]

Mr. Willhoft, the CSS corporate representative, testified that he did not complete a formal investigation, either. In his words: "I was there. There was kind of no need to have a more formal investigation."[48] And this is the exact type of testimony Rule 26(a)(2)(C) contemplates for non-retained experts – Mr. Willhoft can certainly testify what he saw. But he cannot stray into the realm

---

[42] Troy Curault Dep. 145:22—146:5.
[43] *Id.* at 149:17—20.
[44] *Id.* at 143:19—143:13.
[45] *Id.* at 211:23—212:13.
[46] *See* Andre' Curault Dep. 29:14—30:4.
[47] *See* Nicholas Curault Dep. 55:20—56:17.
[48] Willhoft Dep. 133:24-134:3.

of expert testimony prepared for litigation unless he produces a written report. In fact, Mr. Willhoft implied that he is not an expert and would rely on experts and his attorneys to provide such analysis. When asked whether he performed an investigation, he responded:

> I mean, it depends on what you classify as an investigation. Where, you know, like I said, with how the dominos got knocked down and the sequence of events, like even with the TRICIA, I know I beached her. So yeah. Some of the bottom damage is mine. Now, other things that got knocked loose from when ARTCO barges hit my, my boats and my barges and that might have created some hull damage***, that is all for surveyors and accident recreationists*** [sic] to this part is for this, this portion is for him. I really – I don't, I never did a formal investigation. Now, if my attorneys, my insurance company, if they are doing that, you know, that would be on them to tell me.[49]

Further, Mr. Willhoft testified that the only communications he had with ARTCO after the hurricane was a letter sent putting ARTCO on notice of the alleged damage.[50] Mr. Willhoft performed no investigation, contacted no ARTCO personnel, and admitted that he is not an expert.

Again, ARTCO does not take issue with these witnesses testifying as to their personal knowledge of their own marine operations and experiences during the hurricane. ARTCO does not object to these witnesses testifying to what lines they saw or did not see on the ARTCO barges allegedly floating down the river. What ARTCO objects to is these witnesses extrapolating the cause of the ARTCO barge breakaways from their limited personal observations because it is purely speculation. And for these reasons, the Court should limit Plaintiff Witnesses from testifying as to ARTCO's alleged liability and causation of the breakaways.

---

[49] *Id.* at 134:25—135:21 (emphasis added).
[50] *Id.* at 141:20—142:16.

## III. Conclusion

As such, American River Transportation Co., LLC respectfully requests that this Court grant its *Motion in Limine to Limit Opinion Testimony of Troy Currault, Nicholas Currault, Andre' Currault, Sidney Freeman, and Fred Willhoft*.

Respectfully submitted,

**McGLINCHEY STAFFORD, PLLC**

*/s/ Morgan E. Kelley*
Marcelle Mouledoux (#30339)
Kevin M. Frey (#35133)
Morgan E. Kelley (#38299)
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile (504) 596-2800
mmouledoux@mcglinchey.com
kfrey@ mcglinchey.com
mkelley@mcglinchey.com

*Counsel for American River Transportation Co., LLC*

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2023, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Morgan E. Kelley*